L. A. RECTOR v. NORTH CAROLINA ELECTRICAL POWER COMPANY.

(Filed 24 December, 1920.)

**Negligence—Actus Dei—Floods—Evidence—Trials.**

In the building of a dam and power house to generate electrical power on its own land and premises, the defendant is not responsible for damages caused to the plaintiff's land on the stream below, by a rain storm or cloud burst of magnitude theretofore unknown at the place, especially when it appears that the dam remained intact after the storm, and there was no negligence in its construction or in other acts of the defendant relating thereto; and evidence of the extraordinary character of the storm was competent.

APPEAL by plaintiff from *Webb, J.,* at April Term, 1920, of MADISON.

Appeal by the plaintiff from a judgment of nonsuit. In 1911 the defendant company constructed a concrete dam 32 feet high across the French Broad River, two miles below Marshall, and built a power house for the generation of electric power. The defendant bought from the owner 3½ acres from the upper end of a tract of land on the south side of the river just below its dam and powerhouse. The plaintiff bought the remainder of said tract just below the defendant's purchase. In building the dam and powerhouse the defendant cut away and removed from its own land sundry ledges of rock, thick shrubbery and heavy timber for the construction of the tail race from the powerhouse, and piled some of the removed stone on their own land below the dam. The defendant, also, in building the dam, raised the Southern Railroad track on the other side of the river, below the dam, and built a concrete wall extending up the river over 600 feet from the dam on that side.

On 15 July, 1916, there was a severe storm and cloudburst, raising the water on that and the next day several feet above what it had ever

been before. The plaintiff claims that the damage from the flood which washed away a part of the surface of the land below the dam was due to the negligence of the defendant.

The court, at the close of the evidence, directed a nonsuit from which the plaintiff appealed. The plaintiff also excepted to the admission of evidence showing that the freshet was of abnormal size.

*John A. Hendricks, and J. C. Ramsey for plaintiff.*
*Guy V. Roberts and Mark W. Brown for defendant.*

CLARK, C. J. We think that the nonsuit was properly granted and there was no error in the admission of the evidence, which was conclusive, that this freshet was the largest over known in that section and "the memory of man runneth not to the contrary." There was no evidence of negligence in the construction of the dam and powerhouse, or in clearing away the ledge of rock and shrubbery for the construction of the tail race, or in piling the rock on the defendant's own land, nor that so doing was the cause of washing the plaintiff's land, nor if it had been, was it negligence not to have foreseen that there would be a freshet so abnormally high that it would divert the water—if it did so.

The dam was not broken, and no more water came over it and went over the plaintiff's land below than would have come down the river, and it would have gone over the plaintiffs land to exactly the same depth if there had been no dam. It was the hydraulic force of the great volume of water rolling down the river which washed the plaintiff's land and there is no evidence of negligence on the part of the defendant which would have justified submitting the case to the jury.

The great sun, 1,300,000 times larger than the globe upon which we live, brooding over the tropical waste of waters with untempered heat, rarified the atmosphere over the summer seas of the West Indies, at the same time drawing up by evaporation water which formed clouds above. The heavier air of the colder regions, north and south, impelled by the force of gravity, rushed in to fill the vacuum. The counter movement of the winds, and the precipitation of the water, caused a hurricane which passed up the Atlantic coast. This, by some unknown cause, was diverted near Charleston and Savannah northwesterly to the mountains. When over the upper reaches of the French Broad and the Catawba and neighboring streams, the electricity between the stormclouds and the earth caused a cloudburst. It could not be called a rain, but literally "the windows of Heaven were opened and the waters descended."

The defendant, or any other mortal power, was not responsible for the damage caused by the abnormal height of the flood, nor responsible for negligence in not providing against, if it could have been foreseen, the damage which would be done by so unprecedented a flood.

The writer of this opinion was marooned at Morganton by this same flood, which cut off communication on all sides by rail and wire and by public road for several days, and saw the flood that filled the valley of the Catawba, which was 22 feet in height above all precedents, and swept away every bridge across the river for more than 100 miles. It was doubtless the greatest flood in that and neighboring rivers since the Ice Age when the melting glaciers filled the valleys and dug the channels beneath them as beds for the present rivers.

This is the only case which has come to this Court, and probably the only action that has been brought anywhere, to fasten upon any human agency responsibility for the destruction by waters without similar record in historic times.

We think the judge properly held that the defendant was in no wise responsible for the damage done to the plaintiff's land.

Affirmed.